IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JESSE CARTER, individually and
on behalf of all others similarly situated,

      Plaintiffs,

v.

GREEN CASH, LLC, a foreign corporation,
and WB SERVICES, LLC, a foreign corporation,

      Defendants.

_____/

CASE NO.:

<u>CLASS ACTION</u>

**<u>COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
UNDER THE TELEPHONE CONSUMER PROTECTION ACT (TCPA) AND
DEMAND FOR JURY TRIAL</u>**

      Plaintiff JESSE CARTER ("Plaintiff" or "Mr. Carter"), on behalf of himself and all others similarly situated, alleges the following:

**<u>INTRODUCTION</u>**

1.  Plaintiff, individually and on behalf of all others similarly situated, brings this action for damages, and other legal and equitable remedies, resulting from the illegal actions of GREEN CASH, LLC ("Green Cash") and WB SERVICES, LLC ("WB" and collectively "Defendants") in contacting Plaintiff on Plaintiff's cellular telephone in direct contravention and violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. (hereinafter "TCPA"), thereby invading Plaintiffs' privacy.

2.  The TCPA prohibits, among other practices, 1) sending unsolicited text messages (or "SMS" messages) to cellular telephones without prior express consent within the meaning of the TCPA, 2) sending text messages to phone numbers registered on the National Do-Not-Call List in contravention of 47 C.F.R. § 64.1200(c)(2) and 3)

sending text messages without an internal do-not-call procedure conforming to the minimum requirements as set by 47 C.F.R. § 64.1200(d). Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. § 1331. This case involves a question of Federal law, 47 U.S.C. § 227, et seq. (TCPA). Damages and injunctive relief are available under 47 U.S.C. § 227(b)(3).

4. Venue is proper in this District because Defendants engage in business in this district and a substantial part of the events or omissions giving rise to this claim occurred here and because Defendants market its services within this District and is subject to personal jurisdiction herein. Further, Defendants' tortious conduct against Plaintiff occurred within the State of Florida and, on information and belief, Defendants have sent the same text messages complained of by Plaintiff to other individuals within this judicial district, such that some of Defendants' acts in making such calls have occurred within this district, subjecting Defendants to jurisdiction in the State of Florida.

## PARTIES

5. Plaintiff is a natural person who, at all times relevant herein, is and was a resident of and domiciled in Seminole County, Florida and is a Florida citizen. Mr. Carter is, and all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

6.  Upon information and belief, Plaintiff alleges that Defendant GREEN CASH is a corporation incorporated in Wyoming, with a principal place of business in California. Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

7.  Upon information and belief, Plaintiff alleges that Defendant WB is a corporation incorporated in and with a principal place of business in California. Defendant is, and at all times mentioned here in was, a "person as defined by 47 U.S.C. § 153 (39).

8.  Upon information and belief, Plaintiff alleges Defendants are in the online payday loan industry, and aggressively (and illegally) markets its services and engages in business in Florida and all other states. As a part of its business, Defendants own and operate numerous websites designed to elicit loan applications.

9.  Defendants are agents or alter egos or subsidiaries/parents of each other, and the acts described herein were conducted by or on behalf or at the direction of both Defendants – along with other various holding companies or agents or alter egos – pursuant to a common marketing scheme to the benefit of both Defendants.

10. Defendant WB has previously represented that it is either a wholly-owned subsidiary or a brand of Defendant GREEN CASH.

**THE TELEPHONE CONSUMER PROTECTION ACT**

11. Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA"), in response to a growing number of consumer complaints regarding certain telemarketing practices.

12. Consistent with its purpose, the TCPA regulates, among other things, the use of prerecorded messages and use of text or "SMS" messaging. The TCPA was designed

to prevent calls like the ones described within this complaint and to protect of the privacy of citizens. "Voluminous consumer complaints about abuses of telephone technology…prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

13. By enacting the TCPA, Congress made particular and specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102-243. § 7.

14. To effectuate such findings, Congress found that, except in "emergency situations" or where the receiving party consents to such calls, "[b]anning…automated or prerecorded telephone calls…is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id*. at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838 at* 4 (N.D. Ill. Aug. 10, 2012)(citing Congressional findings on TCPA's purpose); *Lardner v. Diversified Consultants Inc.*, 17 F.Supp.3d 1215 (S.D. Fla. 2014)(Same).

15. Specifically, Congress found that "the evidence presented to Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." *Id*. At §§ 12-13. *See also, Mims, 132 S. Ct. at 744.*

16. Relevant to the present case, the FCC issued a declaratory opinion in June 2015 confirming, among other things, that 1) internet-to-phone text messages require consumer consent; and 2) text messages are "calls" subject to the TCPA, reaffirming a previous declaratory opinion. Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 F.C.C. Red 7961(2015).

17. Despite the prohibitions in the TCPA, automated and telemarketing calls thrived, prompting the U.S. Federal Trade Commission (FTC) to open the National Do Not Call Registry in order to comply with the Do-Not-Call Implementation Act of 2003 15 U.S.C. § 6101 et. seq.) ("DNC"). The DNC was signed into law by President George W. Bush on March 11, 2003.  The DNC established the FTC's National Do Not Call Registry ("DNC List" or "Do Not Call List") to facilitate compliance with the TCPA. On June 26, the FCC revised the TCPA rules and adopted new rules to provide consumers with several options for avoiding unwanted telephone solicitations including the DNC List. In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 2003 FCC LEXIS 3673, *1, 18 FCC Rcd 14014, 29 Comm. Reg. (P & F) 830 (F.C.C. June 26, 2003). Registration for the Do-Not-Call list began on June 27, 2003, and enforcement started on October 1, 2003.

18. "Since 2009, the FTC has seen a significant increase in the number of illegal sales calls….. Internet powered phone systems make it cheap and easy for scammers to make illegal calls from anywhere in the world, and to display fake caller ID information, which helps them hide from law enforcement."[1]

19. In addition to being required to check numbers against the *national* DNC list, companies are required to maintain *internal* do not call lists. The FCC rules allow consumers to make "do-not-call" requests that companies must track in internal do-not-call lists. 47 C.F.R. § 64.1200(c); 16 C.F.R. § 310.4(b)(1)(iii)(B). Telemarketers must provide consumers with an automated opt-out mechanism that "must automatically record the called person's number to the seller's do-not-call list

---

[1] https://www.consumer.ftc.gov/articles/0108-national-do-not-call-registry (Last Checked March 27, 2018).

and immediately terminate the call." 47 C.F.R. 64.1200(b)(3). This mechanism was enacted to empower consumers to "stop receipt of unwanted autodialed or prerecorded telemarketing calls to which they never consented." Telephone Consumer Protection Act of 1991, Final Rule, 77 Fed. Reg. 34233, 34239 (June 11, 2012).

20. 47 U.S.C. § 227(b) proscribes telemarketing activities utilizing automated equipment. 47 U.S.C. § 227(c) proscribes telemarketing activities related to privacy rights not limited to the use of automated equipment.

21. 47 U.S.C. § 227(c) instructed the Commission to create and implement rules and regulations effectuating congressional purposes. Those rules and regulations are found at 47 C.F.R. § 64.1200.

22. The T.C.P.A. creates a private right of action for violations of Section 227(b):

(3) PRIVATE RIGHT OF ACTION.—A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—
(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
(C) both such actions.
If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

As well as Section 227(c):

(5) PRIVATE RIGHT OF ACTION.—A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise

> permitted by the laws or rules of court of a State bring in an appropriate court of that State—.

(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

## FACTUAL ALLEGATIONS

23. Plaintiff fully incorporates by reference the preceding paragraphs.

24. GREEN CASH is an online payday loan company, and elicits loan applications, which it then provides to third-party lenders for a commission or finder's fee. As a part of its business practice, GREEN CASH owns and operates multiple websites under various names and URLs, all of which conducts essentially the same practice – eliciting loan applications.

25. Defendant WB conducts the same aforementioned business practices. Among the online payday loan application websites WB owns and/or operates are nocashpayment.com, 45cash.com, 5000cash.com, and 1000cash.com.

26. Defendant WB has previously represented that it is a wholly-owned subsidiary and/or agent and/or brand of Defendant GREEN CASH.

27. Defendants also own or control various other entities as a part of its online payday loan application business, including, but not limited to, Nesmetaju LLC and White Rocks Loans.

28. To solicit online payday loan applications as a part of its exploitative business practice, Defendants enact a scheme whereby it telemarkets via spam phone calls and text messages sent from an Automated Telephone Dialing System ("ATDS") in violation and contravention of the TCPA.

29. Defendant's spam text messages are designed to solicit consumers to visit its website and submit loan applications, which are then transmitted to third-party lenders for a fee, who then lend money to vulnerable consumers at usurious and injurious rates.

30. Defendant's business model is entirely predicated on its spam and abusive telemarketing techniques.

31. At no time did Plaintiff provide his cellular telephone numbers to Defendant through any medium or consent to the unsolicited and illegal spam text messages.

32. On or about February 9, 2019, Plaintiff received an unsolicited text message from Defendants advertising their website and marketing the availability of a loan for "$5000" and soliciting Plaintiff to submit a loan application via a website represented as unitedstatecashonline.com. Nowhere was Plaintiff identified nor was his name used in any form.

33. The generic and impersonal nature of the message demonstrates and indicates that Defendants transmitted the text via an ATDS. See Jenkins v. LL Atlanta, LLC, No. 1:14-cv-2791-WSD, 2016 U.S. Dist. LEXIS 30051, at *11 (N.D. Ga. Mar. 9, 2016) ("These assertions, combined with the generic, impersonal nature of the text message advertisements and the use of a short code, support an inference that the text messages were sent using an ATDS.") (citing Legg v. Voice Media Grp., Inc., 20 F. Supp. 3d 1370, 1354 (S.D. Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using ATDS; use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS); Kramer v. Autobytel, Inc., 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that defendants used an ATDS where messages were advertisements written in an impersonal manner

and sent from short code); <u>Hickey v. Voxernet LLC</u>, 887 F. Supp. 2d 1125, 1130; <u>Robbins v. Coca-Cola Co.</u>, No. 13-CV-132-IEG NLS, 2013 U.S. Dist. LEXIS 72725, 2013 WL 2252646, at *3 (S.D. Cal. May 22, 2013) (observing that mass messaging would be impracticable without use of an ATDS)).

34. The texts were transmitted via a telephone number owned by Neutral Tandem-Montana, LLC, a communications company that provides services via "Neutral Tandem," a system of data transmission that incorporates various carriers and networks – a "network of networks" so to speak. A part of its services is providing "block numbers" such as the number which transmitted the text.

35. The number is also a VoIP, which is a technology allowing users to place calls or texts using a broadband internet connection rather than a regular or analog line.

36. The use of a third party neutral tandem network and a VoIP number – using an internet connection rather than a designated or regular phone number or landline – is further indicia of the mass transmission and use of an automated delivery system and ATDS.

37. The texts, described above, was unsolicited and unexpected by Plaintiff. Plaintiff, prior to the receipt of the spam text message, had not provided his cellular telephone number to Defendants.

38. Through this conduct, Defendants contacted Plaintiff on Plaintiff's cellular telephone regarding an unsolicited service via an "automatic telephone dialing system" ("ATDS") as defined by 47 U.S.C. § 227(a)(1) and prohibited by 47 U.S.C. § 227(b)(1)(A).

39. The telephone numbers Defendants called were assigned to a cellular telephone service pursuant to 47 U.S.C. § 227(b)(1).

40. The telephone numbers Defendants called were assigned to numbers for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

41. The unsolicited text message constitutes a call that was not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i), and for which they did not receive consent, pursuant to 47 U.S.C. § 227(b)(1)(A).

42. The text message sent by Defendants, or its agent, described above violated 47 U.S.C. § 227(b)(1).

43. Alternatively, Defendants enlisted a third-party telemarketing company to act as its agent in sending the unsolicited text messages.

44. Defendants and/or its agent sent or are responsible for sending the text messages at issue in this Complaint, including the text message sent to Plaintiff, all of which violated the TCPA.

45. The text message weas "advertisement[s]" in that the messages were material advertising the commercial availability or quality of Defendants' property, goods or services – namely, Defendants' online payday loan application services. 47 C.F.R. § 64.1200(f)(1).

46. Defendants are a seller because they are persons or entities on whose behalf telephone messages were initiated to encourage the use of Defendants' business services. 47 C.F.R. § 64.1200(f)(9).

47. Defendants are telemarketers because they are persons or entities that initiated the telephone messages to encourage the use of Defendants' goods or services or property. 47 C.F.R. § 64.1200(f)(11).

48. Defendants failed to meet the meet the minimum standards of 47 C.F.R. § 64.1200(d) by lacking:

(1) A written policy for maintaining a do-not-call list.

      (2) Training of personnel in the existence and use of the do-not-call list.

      (3) Recording, disclosure of do-not-call requests.

      (4) Identification of sellers and telemarketers.

      (5) Maintenance of do-not-call lists.

49. The rules set forth in 47 C.F.R. § 64.1200(d) are applicable to Defendants because the text messages were telephone solicitations to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991." 47 C.F.R. § 64.1200(e).

50. Defendants sent Plaintiff the text messages notwithstanding the fact that Plaintiff never provided his cellular telephone number to Defendant nor gave any consent to receive phone calls or text messages from Defendants.

51. Through this conduct, Defendants contacted Plaintiff on Plaintiff's cellular telephone, thereby invading their privacy, with unsolicited telemarketing text messages prohibited by 47 U.S.C. § 227(c)(1)(A) and 47 C.F.R. § 64.1200(c).

## **CLASS ACTION ALLEGATIONS**

52. Plaintiff fully incorporate by reference paragraphs 1-22, 24-51.

53. Plaintiff brings this action on behalf of himself individually and all others similarly situated.

54. Defendants send unsolicited text messages without express, prior consent and not pursuant to an ongoing emergency, as described herein.

55. Plaintiff individually represents and is a member of the following Class consisting of:

> "All persons within the United States who received one or more text messages from Defendants pursuant to a scheme substantially similar or identical to the text messaging scheme described in this Complaint via an ATDS between February 12, 2015, and the certification of this class."

56. Defendants and their employees or agents are excluded from the Class. Plaintiff does not currently know the number of members in the Class, but, upon information and belief, as well as the investigation of his attorneys, believes the number to be in the thousands or tens of thousands, and perhaps more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

57. The text messages were sent pursuant to a common telemarketing scheme for which Defendants did not obtain the necessary consent required by the TCPA and its delivery restrictions in 47 C.F.R. § 64.1200(a).

58. Whether or not the unsolicited text messages were sent via ATDS, the unsolicited text messages were sent pursuant to a common telemarketing scheme during which Defendants did not comply with and thus violated the telemarketing restrictions of the TCPA and its telephone solicitation restrictions in 47 C.F.R. § 64.1200(c)-(e).

59. The telephone numbers Defendants called were assigned to a cellular telephone service. 47 U.S.C. § 227(b)(1).

60. Each unsolicited text message was a call that was not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i) and 47 C.F.R. § 64.1200 and for which Defendants did not receive prior consent, as required by 47 U.S.C. § 227(b)(1)(A) and 47 C.F.R. § 64.1200.

61. The unsolicited text messages were telephone calls that "includes or introduces an advertisement or constitutes telemarketing" pursuant to 47 C.F.R. § 64.1200(a)(2).

62. Plaintiff and the members of the Class were harmed by actions of Defendant in at least, but not limited to, the following ways: Defendant, either directly or through its agents, illegally contacted the Plaintiffs and the Class members via their cellular telephones by using an unsolicited spam text message(s), thereby invading the privacy of Plaintiffs and the Class members and causing other harms recognized by TCPA regulations and courts interpreting such regulations. Plaintiff and the Class members were thereby damaged.

63. This suit, on behalf of the Class, seeks damages and injunctive relief for recovery of economic injury only. This suit is not intended to procure recovery for personal injury and/or related claims. Plaintiff reserves the right to modify or expand the Class definition to seek recovery on behalf of additional persons as warranted through further investigation and discovery.

64. The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits to both parties and to this Court. The Classes can be specifically identified through Defendants' records, or through the records of Defendant's agent(s), or through the records of third-party carriers.

65. The commonality in questions of law and fact and the intersecting community of interests protected by the TCPA therein have been repeatedly established. The common questions of law and fact to the Class predominate over questions which may affect individual Class members, including, but not limited to, the following:

    a.   Whether, within the four years prior to the filing of the Complaint, Defendants or its agents sent any unsolicited text message(s) to the Class (other than, as previously mentioned, any message made for emergency purposes or with the prior express consent of the called party, or any other statutory exception) using any automatic dialing and/or SMS texting system to any telephone number assigned to a cellular phone service;

    b.   Whether Defendants maintained Do Not Call lists, policies, and/or training;

    c.   Whether consumers suffer injury where they receive unsolicited text messages from entities lacking required internal telemarketing procedures;

    d.   Whether Plaintiff and the Class members were damaged, and the extent of damages for such violation, and;

    e.   Whether Defendants and its agents should be enjoined from engaging in such conduct in the future;

    f.   Whether Plaintiff and the Class are entitled to any other relief.

66. As someone who received at least one unsolicited spam text message from Defendant without prior express consent, Plaintiffs are asserting claims that are typical of both Class. Plaintiffs will fairly and adequately represent and protect the interests of the Class, and has no interests antagonistic to any other member of the Class.

67. Plaintiff and the members of the Class have all suffered irreparable harm as a result of Defendant's unlawful and wrongful conduct. Absent a class action, the Class will continue to face the potential for further harm. Additionally, these violations of law will be allowed to proceed without remedy and Defendants will thus likely continue such and substantially similar illegal conduct, including pertaining specifically to Plaintiff and the class. Because of the nature of individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.

68. Plaintiff has retained counsel experienced in handling class action claims, as well as claims involving violations of the TCPA.

69. A class action is the best method for the fair, efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal and state law. The interest of Class members to individually control the prosecution of separate claims against Defendant is small due to the minimal nature of the maximum statutory damages in a separate or individual action alleging invasion of privacy through violation of the TCPA.

70. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

71. Defendant has acted on grounds generally applicable to the Class, thus making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

## COUNT I: VIOLATIONS OF THE TCPA 47 U.S.C. § 227 ET SEQ.
### (on behalf of Plaintiff and the Class)

72. Plaintiff fully incorporates by reference paragraphs 1-22, 24-51, 53-71.

73. The foregoing acts and omissions by Defendants and/or Defendants' agent(s) constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

74. As a result of Defendants' violations of 47 U.S.C. § 227 et seq., Plaintiff and the Class are entitled to an award of $500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

75. Plaintiff and the Class are also entitled to and seek declaratory and injunctive relief prohibiting such conduct in the future.

## COUNT II: KNOWING AND/OR WILLFUL VIOLATIONS OF TCPA 47 U.S.C. § 227 ET SEQ.
### (on behalf of Plaintiff and the Class)

76. Plaintiff fully incorporates by reference paragraphs 1-22, 24-51, 53-71.

77. The foregoing acts and omissions by Defendants and/or Defendants' agent(s) constitute numerous knowing and/or willful violations of the TCPA, including, but not limited to, each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

78. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiff and the Class are entitled to an award of $1,500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

79. Plaintiff and the Class are also entitled to and seek declaratory injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff and the Class members the following relief against Defendant:

### Count I: Violations of the TCPA, 47 U.S.C. § 227 Et Seq.

- As a result of Defendants' violations of 47 U.S.C. § 227 demonstrated herein, Plaintiff seeks for himself and each Class member $500.00 in statutory damages, for each and every violation.

- Pursuant to 47 U.S.C. § 227, injunctive relief prohibiting such conduct in the future.

- Any other relief the Court deems just and proper.

### Count II: Knowing and/or Willful Violations of the TCPA, 47 U.S.C. § 227 Et Seq.

- As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227 demonstrated herein, Plaintiff seeks for himself and each Class member $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227.

- Pursuant to 47 U.S.C. § 227, injunctive relief prohibiting such conduct in the future.

- Any other relief the Court deems just and proper.

### TRIAL BY JURY

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff demands his right to a trial by jury.

Dated February 26, 2019.                          Respectfully submitted,

                                                  */s/ Ed Normand*
                                                  Edmund A. Normand
                                                  Fla. Bar No. 865590

*/s/ Jake Phillips*
Jacob L. Phillips
Fla. Bar No. 120130
**NORMAND PLLC**
3165 McCrory Place
Suite 175
Orlando, Florida 32803
Telephone:  (407) 603-6031
service@ednormand.com
ed@ednormand.com
jacob.phillips@normandpllc.com

*Attorneys for Plaintiff and Putative
Class*